UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

LNV Corporation,

        Plaintiff,

                               Civil No. 13-1926 (JNE/LIB)

v.                                     ORDER

Outsource Service Management, LLC
d/b/a Presidium Asset Solutions and
BF-Negev, LLC,

        Defendants.

LNV Corporation brought this action against Outsource Service Management, LLC

("OSM") and BF-Negev, LLC.  OSM asserted counterclaims against LNV, and LNV has now

moved to dismiss a portion of those counterclaims.  ECF No. 56.

For the reasons discussed below, the motion will be denied.

**Background**

In relevant part, this case arises from LNV and OSM's dispute over their respective rights

and obligations stemming from a $140 million construction loan, known as the Lake Austin loan,

that was made to a developer to build the Grande Palisades resort and condominium complex

near Disney World in Orlando, Florida.[1]

According to OSM's allegations, the Lake Austin loan was originated by the Marshall

Financial Group of Minneapolis in 2007.  To finance the loan, Marshall entered into participation

---

[1]     LNV is also suing BF-Negev in connection with a different loan, referred to in the papers
as the Bahia loan.  BF-Negev and the Bahia loan are not relevant to the motion currently before
the Court.

agreements with a number of different banks.  One of them was Columbian Bank of Kansas, which purchased an approximately 4.3% undivided interest in the loan.  According to the Participation Agreement, when the borrower made a draw request for an "Advance" of principal from Marshall, Columbian Bank was to deposit its pro rata share of the disbursement into Marshall's designated account.  Columbian Bank also agreed to pay its proportion of any "Extraordinary Expenses," or costs that the lead lender may have to incur to "collect and enforce payment and performance" from the borrower.

In August of 2008, Columbian Bank was closed by the Kansas State Bank Commissioner and the Federal Deposit Insurance Corporation was appointed as receiver.[2]  Over a year later, on September 30, 2009, the FDIC-R finalized the sale of a pool of loans owned by Columbian Bank to LNV.  Included in this package was Columbian Bank's interest in the Lake Austin loan, which by then was non-performing.  As of the date on which LNV signed the Loan Sale Agreement with the FDIC-R, OSM alleges that over $3 million in Advances due under the Participation Agreement had gone unpaid.  That shortfall had been made up by a group of other participants in the Lake Austin loan.

By October of 2009, through a series of assignments, OSM had become the lead lender and servicer of the loan.  The next month, OSM commenced litigation against the defaulted borrower and its guarantors seeking collection of the debt and a judicial foreclosure on the Lake Austin project. Owing to that litigation and other efforts, OSM alleges that it incurred over $15 million in Extraordinary Expenses.

---

[2]     Hereinafter, "FDIC-R" refers to the FDIC in its capacity as receiver for Columbian Bank, while "FDIC" refers generally to the agency.

Since 2009, OSM repeatedly demanded payment from LNV of both the unfunded Advances and its share of the Extraordinary Expenses under the terms of the Participation Agreement. LNV repeatedly refused, and this action followed.

**Discussion**

On these allegations, OSM brought counterclaims against LNV for breach of contract, declaratory judgment, and unjust enrichment. With its Motion to Dismiss, LNV argues that a portion of OSM's breach of contract claim should be dismissed for lack of subject matter jurisdiction, and that OSM's declaratory judgment and unjust enrichment claims should each be dismissed both for lack of subject matter jurisdiction and for failure to state a claim on which relief can be granted.

The jurisdictional issues LNV raises under Federal Rule of Civil Procedure 12(b)(1), "whether they involve questions of law or fact, are for the court to decide." *Osborn v. U.S.*, 918 F.2d 724, 729 (8th Cir. 1990) (citation omitted). Accordingly, if the parties submit matters outside the pleadings – as they have done here – the court is

> free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to the [claimant's] allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the [claimant] will have the burden of proof that jurisdiction exists.

*Id.* at 730 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1977)). With that said, however, a decision on jurisdiction may be deferred if it is "so bound up with the merits that a full trial on the merits may be necessary to resolve the issue." *Osborn*, 918 F.2d at 730 (internal quotation and citation omitted).

In contrast, when considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court cannot consider matters outside the pleadings without converting the motion into one for summary judgment. Fed. R. Civ. Pro. 12(d); *Osborn*, 918 F.2d at 729. Instead, on a motion to dismiss, the court must accept the alleged facts as true and grant all reasonable inferences in favor of the claimant. *Mulvenon v. Greenwood*, 643 F.3d 653, 656 (8th Cir. 2011). To survive the motion, the complaint need not contain detailed factual allegations, but it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

With these rules and standards in mind, the Court turns to the substance of the motion.

## I.      Lack of subject-matter jurisdiction (FIRREA).

On the Rule 12(b)(1) portion of its motion, LNV argues that the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") bars this Court from entertaining a portion of OSM's breach of contract claim, as well as its declaratory judgment and unjust enrichment claims.

### A.  Breach of contract.

OSM's first claim is that LNV has breached the Participation Agreement by failing to pay its pro rata share of Advances, Extraordinary Expenses, and servicing fees to OSM in its capacity as the lead lender and loan servicer. LNV has moved to partially dismiss this claim for lack of

subject matter jurisdiction insofar as it concerns funds that came due prior to LNV's purchase of Columbian Bank's participation in the Lake Austin loan from the FDIC-R on September 30, 2009.

LNV's argument is that 12 U.S.C. § 1821(d)(13)(D) divests the Court of subject matter jurisdiction over that pre-9/30/2009 portion of OSM's breach of contract claim.  Section 1821(d)(13)(D) reads as follows:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over—
>
> (i)     any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>
> (ii)    any claim relating to any act or omission of such institution or the Corporation as receiver.

This provision was enacted with FIRREA, which Congress passed at the height of the savings and loan crisis to, among other purposes, reform the federal deposit insurance system and bolster the powers of the FDIC to efficiently and independently wrap up the affairs of failed depository institutions.  *See* Pub .L. No. 101-73, § 101.

One of the ways in which Congress achieved the latter goal was by granting the FDIC the authority to determine claims against the assets of a failed depository institution for which it has been appointed receiver.  12 U.S.C. § 1821(d)(3)(A).  Under the administrative process established by the statute, persons or entities with a claim against the institution are required to promptly present that claim, along with proof thereof, to the FDIC-R.  *Id.* at (d)(3)(B).  If the receiver disallows the claim, the claimant may then either file suit in federal district court or pursue administrative review.  *Id.* at 1821(d)(6)(A).  If the claimant takes the latter course and

the claim is still disallowed, that result is a final agency decision that is subject to judicial review under the Administrative Procedures Act.  *Id.* at (d)(7)(A).  Therefore, the jurisdiction provision at § 1821(d)(13)(D) effectively makes these the only paths to federal court for a person or entity with a claim either against the assets of the institution or relating to the actions of the institution or the FDIC-R.  *See, e.g., RTC Mortg. Trust 1994-N2 v. Haith*, 133 F.3d 574, 578 (8th Cir. 1998) (finding exhaustion of FIRREA's administrative claims procedure to be a mandatory "precondition to civil litigation").

LNV's jurisdiction argument, then, is predicated upon its contention that OSM and its predecessors could have, but failed to, pursue a claim with the FDIC-R for payment of the funds that came due under the Participation Agreement before the loan sale date of 9/30/2009.  In response, OSM concedes that no claim for payment out of Columbian Bank's assets was ever presented to the FDIC-R, but argues on various grounds that that failure is not determinative here because it and its predecessors did not have a claim that could have been pursued through FIRREA's administrative process.

Upon a careful review of the pleadings, as well as the Participation Agreement and Loan Sale Agreement that are incorporated therein, it is evident that this dispute is not ripe for adjudication.  Whether OSM or its predecessors could have, or must have, brought a claim through the administrative process is a secondary question.  The answer to the preliminary question – whether OSM or its predecessors ever had a cognizable claim against the assets of Columbian Bank for breach of contract, and if so exactly what the claim was for and when it accrued – is a function of the contract.  But the parties have not addressed the terms of the Participation Agreement in any depth here, including how, if at all, Columbian Bank's obligation to pay Advances and Extraordinary Expenses under the Participation Agreement prior to

6

9/30/2009 would have been affected by the other participants' funding of the shortfall that arose during the receivership – and, for that matter, how it may have been affected by the borrower's default.

By the same token, whether OSM has a valid claim against LNV arising out of any pre-9/30/2009 facts would appear to be a function of the rights and obligations LNV assumed from Columbian Bank via the Loan Sale Agreement it signed with the FDIC-R.  To grant the motion that LNV has brought would thus require the Court to construe both of the contracts at issue and apply them to a factual record that, at this early stage in the litigation, is far from fully developed.

The Court therefore denies the motion with respect to OSM's breach of contract claim.


**B.  Declaratory judgment and unjust enrichment.**

In Count II of its Counterclaims, OSM seeks a declaration that LNV is obligated to pay its share of Advances and Extraordinary Expenses under the Participation Agreement regardless of whether those amounts were incurred before or after 9/30/2009, and – what is essentially the same – that FIRREA does not pose a jurisdictional bar to OSM's recovery of those funds.  In Count III, OSM asserts that LNV has been unjustly enriched by retaining the monies it should have paid out under the Participation Agreement.

LNV argues that both of these claims should be dismissed because FIRREA, at 12 U.S.C. § 1821(j), precludes a federal court from granting equitable relief in these circumstances.

Section 1821(j) states that:

> Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or a receiver.

According to LNV, OSM's declaratory judgment and unjust enrichment claims are barred by §

1821(j) because, if granted, they would affect the FDIC-R's exercise of its powers by "re-

writing" the terms of the Loan Sale Agreement and thereby diluting its value.

LNV's argument is not persuasive.  At bottom, OSM seeks to recover from LNV, and

such relief simply would not "restrain or affect" the FDIC-R in any way.  Furthermore, the

Eighth Circuit has explained that § 1821(j) "fully accords with the intent of Congress . . . to

enable the FDIC and the Resolution Trust Corporation ("RTC") to expeditiously wind up the

affairs of . . . failed financial institutions throughout the country." *Hanson v. F.D.I.C.*, 113 F.3d

866, 871 (8th Cir. 1997) (quoting *Freeman v. F.D.I.C.*, 56 F.3d 1394, 1398 (D.C. Cir. 1995)).

LNV cites no authority for the proposition that an entity in its position as a third-party purchaser

of a failed institution's assets may assert a defense that the statute grants specifically – and solely

– to the FDIC-R.

LNV's motion, in this respect, is therefore denied.


**II.      Failure to state a claim upon which relief can be granted.**

LNV also moves to dismiss OSM's declaratory judgment and unjust enrichment counts

for failure to state a claim upon which relief can be granted.  LNV argues that these are both

equitable claims that fail as a matter of Minnesota law because OSM has an adequate alternative

legal remedy, whether through FIRREA's administrative procedures or via the breach of contract

claim it brings here.  *See U.S. Fire Ins. Co. v. Minnesota State Zoological Bd.*, 307 N.W.2d 490,

497 (Minn. 1981) (finding that "equitable relief cannot be granted where the rights of the parties

are governed by a valid contract").

As an initial matter, LNV's argument is inapplicable to OSM's request in Count II for a declaration regarding the monies in dispute as well as the application of FIRREA's jurisdictional bar to these facts.  The declaratory judgment OSM seeks under 28 U.S.C. § 2201 is "neither legal nor equitable," *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 284 (1988), and the "existence of an adequate alternative remedy does not preclude a declaratory judgment that is otherwise appropriate," Fed. R. Civ. P. 57.  *See also id.* advisory committee's note ("When declaratory relief will not be effective in settling the controversy, the court may decline to grant it.  But the fact that another remedy would be equally effective affords no ground for declining declaratory relief.")

With that said, the unjust enrichment claim OSM asserts in Count III is certainly equitable in nature.  While OSM does not contest the application of Minnesota law to that claim, it argues that its dismissal at this stage of the litigation would be premature.  The Court agrees.  Federal Rule of Civil Procedure 8(d) allows OSM to bring its claims in the alternative; its unjust enrichment claim may move forward along with the breach of contract claim "unless and until [the] contract is deemed to be valid and to govern the dispute."  *U.S. Bank Nat. Ass'n v. Education Loans Inc.*, Civ. No. 11-1145 (RHK/JJG), WL 5520437 (D.Minn. Nov. 14, 2011).

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1.  Plaintiff's Motion to Dismiss [ECF No. 56] is DENIED.

Dated: March 4, 2014                         s/Joan N. Ericksen
                                             JOAN N. ERICKSEN
                                             United States District Judge