**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| LNV Corporation, a Nevada corporation, | Court File No. 13-cv-1926 (JNE/LIB) |
| Plaintiff, | |
| v. | |
| Outsource Services Management, LLC, a Nevada limited liability company d/b/a Presidium Asset Solutions; and BF-Negev, LLC, a Minnesota limited liability company, | **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| Defendants. | |

---

## INTRODUCTION

This is a breach-of-contract case, and the written contracts will determine the parties' respective rights, obligations, and claims. But rather than focus on the relevant contracts, LNV Corporation ("LNV") has tried from the beginning to complicate this matter by asserting numerous equitable, tort, and statutory theories – even seeking punitive damages from Outsource Services Management, LLC ("OSM") and BF-Negev, LLC ("BFN"). Because LNV's non-contractual claims fail as a matter of law, the Court should enter partial summary judgment in OSM and BFN's favor and dismiss Counts V, VI, VII, IX, X and XI of LNV's Complaint.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

LNV's affirmative claims relate to its participation interests in two loans: the "Bahia Participation" and "Lake Austin Participation." BFN is the lead lender for the

Bahia Participation and OSM is the lead lender for the Lake Austin Participation.  None of the parties to this case were originally involved in the participations at issue.  They obtained their interests via assignments from third parties.  The relevant history and terms of the Loans and Participations are summarized in greater detail below.

**A.    The Bahia Loan And Participation**

On or about January 31, 2007, BankFirst agreed to provide a $30 million credit facility to Bahia River Associates, LLC, Bahia Marine Associates, LLC, and Manatee Bay Associates, LLC.  This credit facility will be referred to as the "Bahia Loan."  (See Complaint of LNV Corporation, filed July 17, 2013 ("Comp.") [Dkt. #1], ¶ 17; see also Answer and Counterclaims of Outsource Services Management, LLC, filed August 16, 2013 ("Ans.") [Dkt. #6], ¶ 18.)  The Bahia Loan proceeds were to be used in connection with the re-financing and construction of a waterfront master planned real estate development located near Tampa, Florida known as the "Little Harbor Development." (Affidavit of Brian Dougherty, respectfully submitted herewith, ¶ 6, Exhibit 2.)

On or about February 1, 2007, First Priority Bank acquired a 3.3333333% participation interest in the Bahia Loan.  (Dougherty Aff. Ex. 4, at § 4.2(a); see also Comp., ¶ 18; Ans., ¶ 19.)  First Priority Bank's participation interest in the Bahia Loan was governed by a written Loan Participation Agreement (the "Bahia Participation Agreement").  (See generally Dougherty Aff. ¶ 9, Ex. 4.)

**1.    The pertinent terms of the Bahia Participation Agreement.**

In Section 3.1 of the Bahia Participation Agreement, First Priority Bank represented and agreed that:

[First Priority Bank] has, **without reliance on [BankFirst]**, any other Credit Provider or the directors, officers, agents, employees or attorneys of [Bank First], and instead in reliance upon information supplied to it by or on behalf of the Obligor and upon such other information as [First Priority Bank] has deemed appropriate, **made its own independent credit analysis and decision** to purchase its Participation Interest in the Credit;

[First Priority Bank] agrees that it shall, **independently and without reliance upon [BankFirst]**, any other Credit Provider or the directors, officers, agents, employees or attorneys of the Lender, **continue to make its own independent credit analysis and decisions** in acting or not acting under this Agreement and the Credit Agreements; provided [BankFirst] shall provide to [First Priority Bank] on a timely basis, all information received by [BankFirst] from or on behalf of Obligor necessary to enable [First Priority Bank] to make such analysis and decisions as well as continued reasonable access to inspect loan documents and information within 48 hours of request[.][1]

(Dougherty Aff. Ex. 4, § 3.1(c) (emphasis added).)

Section 4.2 of the Bahia Participation Agreement defines the parties' relationship

with one another as follows:

Lender hereby sells, and Participant hereby purchases, an undivided interest in and to the Credit and the Credit Agreements in an amount equal to the Participant's Participation Percentage…

\*\*\*

**This Agreement creates a participation** in the Credit and the Credit Agreements **only** and is **not** intended to form **a partnership or joint venture** between [BankFirst] and [First Priority Bank].

(Dougherty Aff. Ex. 4, § 4.2(b) (emphasis added).)

In its role as the lead "Lender" for the participation, BankFirst agreed to

administer the Bahia Loan in the following manner:

---

[1] BankFirst posted (and OSM posts) information about the Bahia Loan on a webpage called "LoanLink," which is accessible by the participants.  (Dougherty Aff. ¶ 4.)

> [BankFirst] agrees to administer the Credit in a commercially reasonable manner in which similar credits would be administered and shall exercise that degree of care that would ordinarily be exercised by lenders administering a construction loan and otherwise in accordance with the usual practices and procedures employed by [BankFirst] on similar accounts in which it has no participants and [BankFirst] agrees to take such actions as it deems to be necessary or appropriate to monitor and maintain the Credit Agreements on behalf of the Credit Providers in such manner.

(Dougherty Aff. Ex. 4, § 4.2(c).)  Although BankFirst was responsible for administrative tasks, "[f]or all actions not administrative in nature…[BankFirst would] act at the direction of the Participants [including First Priority Bank]."  (Id., §§ 4.6-4.7.)

Section 6 of the Bahia Participation Agreement provides for mutual indemnity between the lead lender and participant, but expressly limits the kinds of damages the parties can seek from each other arising out of the Bahia Participation Agreement:

> Nor shall either [BankFirst] or [First Priority Bank] be responsible or liable to the other for consequential damages which may be alleged as a result of this Agreement.

(Dougherty Aff. Ex. 4, § 6.)

## 2. The parties to this action now stand in the shoes of First Priority Bank and BankFirst.

On August 1, 2008, First Priority Bank was closed by the Florida Office of Financial Regulation, and the FDIC (the "FDIC-R") was named Receiver.  (Comp., ¶ 22; Ans., ¶ 23.)  On November 24, 2008, the FDIC-R entered into a Loan Sale Agreement with LNV.  In the Loan Sale Agreement, the FDIC-R sold and assigned First Priority Bank's participation interest in the Bahia Loan to LNV.  (Dougherty Aff. Ex. 5, § 2.1, see also Attachment "A" thereto; Comp., ¶ 23; Ans., ¶ 24.)  LNV now stands in the shoes of First Priority Bank for the purposes of the Bahia Participation Agreement.  (See id.; see

<u>also</u> Dougherty Aff. Ex. 4, § 8.2 (providing that the Bahia Participation Agreement is binding upon all successors and assigns); Comp., ¶ 100; Ans., ¶ 101.)

On June 8, 2009, BankFirst assigned the Bahia Loan to BFN, making BFN the lead "Lender" for the Bahia Loan.  (Dougherty Aff. ¶ 7, Ex. 3; <u>see</u> <u>also</u> Comp., ¶ 24; Ans., ¶ 25.)  BankFirst was the servicer for the Bahia Loan and Participation Agreement from January 1, 2008 until July 17, 2009, when BankFirst failed.  Through a series of assignments, effective August 18, 2009, the FDIC assigned the servicing rights for the Bahia Loan to OSM.  (Dougherty Aff. ¶ 8; Comp., ¶ 3; Ans., ¶ 4.)

In short, OSM is now the servicer of the Bahia Loan, BFN is now the lead Lender, and LNV owns First Priority Bank's participation interest.  (<u>See</u> Dougherty Aff. ¶¶ 5-8; Compl., ¶¶ 2-4; Ans., ¶¶ 3-5.)

**B.    <u>The Lake Austin Loan And Participation</u>**

On April 27, 2007, Marshall Financial Group, LLC ("Marshall") made a $140 million construction loan to Lake Austin Properties I, Ltd.  (Dougherty Aff. ¶ 11, Ex. 6; Comp., ¶ 40; Ans., ¶ 41.)  This loan will be referred to as the "Lake Austin Loan." The Lake Austin Loan proceeds were to be used in connection with the construction of an 890-unit resort condominium project located in Orlando, Florida.  (<u>Id.</u> at ¶ 12, Ex. 7.)

On or about April 30, 2007, the Columbian Bank & Trust Company of Topeka, Kansas purchased a 4.28571429% participation interest in the Lake Austin Loan. (Dougherty Aff. ¶ 16, Ex. 8; <u>see</u> <u>also</u> Comp., ¶ 41; Ans., ¶ 42.)  Columbian's participation interest in the Lake Austin Loan was governed by a written Participation Agreement.  (Dougherty Aff. Ex. 8.)

1.      **The pertinent terms of the Lake Austin Participation Agreement.**

In Section 2.1 of the Lake Austin Participation Agreement, Columbian represented

and agreed as follows:

> [Columbian] has, **without reliance of any kind or nature on [BankFirst]**,
> any other Credit Provider or the directors, officers, agents, employees or
> attorneys of [Marshall], and instead in reliance upon information supplied
> to it by or on behalf of the Obligor and upon such other information as
> [Columbian] has deemed appropriate, **made its own independent credit
> analysis and decision** to purchase its Participation Interest in the Credit;
>
> [Columbian] will, **independently and without reliance of any kind or
> nature on [Marshall]**, any other Credit Provider or the directors, officers,
> agents, employees or attorneys of the Lender, **continue to make its own
> independent credit analysis and decisions** in acting or not acting under
> this Agreement and the Credit Agreements[.]

(Dougherty Aff. Ex. 8, § 2.1(c)-(d) (emphasis added).)

In its role as the lead "Lender" for the participation, Marshall agreed to administer

the Lake Austin Loan in the following manner:

> [Marshall] agrees to administer the Credit in a manner consistent with the
> practices and procedures it employs on similar loans.  [Marshall] may take
> such actions as it deems necessary or appropriate to monitor and maintain
> the Credit Agreements on behalf of the Credit Providers, and Participant
> consents to such actions taken by [Marshall].

(Dougherty Aff. Ex. 8, § 3.3(a).)  Section 3.2 of the Lake Austin Participation Agreement

describes the parties' relationship with one another as follows:

> **This Agreement creates a participation interest** in the Credit, the Credit
> Agreements, the Collections and the Collateral and shall **not** be interpreted
> or construed as a loan or extension of credit from [Columbian] to
> [Marshall] or Obligor, or interpreted or construed to form **a partnership
> joint venture or other special relationship of any kind or nature**
> between [Marshall] and [Columbian].

(Dougherty Aff. Ex. 8, § 3.2(b) (emphasis added).)  Consistent with the arms-length

nature of their relationship, in Section 2.2 of the Lake Austin Participation Agreement,

Columbian expressly agreed that Marshall was not required to act in Columbian's best

interests in its dealings with the Borrowers under the Lake Austin Loan:

> [MARSHALL'S] INTERESTS IN SUCH OTHER FINANCIAL
> ACCOMMODATIONS OR OTHER TRANSACTIONS MAY
> CONFLICT WITH THE INTERESTS OF [COLUMBIAN BANK] AND
> OTHER PARTICIPANTS, AND IN SUCH CIRCUMSTANCES,
> **[MARSHALL] MAY ACT IN ITS OWN INTERESTS** OR IN THE
> INTERESTS OF OTHER PERSONS TO WHICH IT HAS
> TRANSFERRED INTERESTS IN SUCH OTHER FINANCIAL
> ACCOMMODATIONS OR OTHER TRANSACTIONS, **EVEN IF SUCH
> ACTIONS ARE DETRIMENTAL TO THE INTERESTS OF
> [COLUMBIAN]**.

(Dougherty Aff. Ex. 8, § 2.2(l) (emphasis added; capitalization in original).)

Section 5 of the Lake Austin Participation Agreement provides for mutual

indemnity between the lead lender and participant, but expressly limits the damages the

parties can seek from each other related to the Lake Austin Participation:

> Neither [Marshall] nor [Columbian Bank] is responsible or liable to any
> Person for consequential, punitive, special, or indirect damages arising
> from or related to the breach of any term, condition or provision of this
> Agreement.

(Dougherty Aff. Ex. 8, § 5(c).)

### 2.    The parties to this action now stand in the shoes of Marshall, BankFirst, and Columbian.

On August 22, 2008, Columbian Bank was closed by the Kansas Office of the

State Bank Commissioner and the FDIC was named Receiver.  (Dougherty Aff. ¶ 17; see

also Comp., ¶ 47; Ans., ¶ 48.)  On September 30, 2009, the FDIC entered into a Loan

Sale Agreement with LNV, pursuant to which the FDIC assigned the Grande Palisades

Participation to LNV.  (Dougherty Aff. Ex. 9, § 2.1; id., Attachment "A"; see also Comp.,

¶ 63; Ans., ¶ 64.)  As a result, LNV stands in the shoes of Columbian Bank for the

purposes of the Grande Palisades Participation Agreement.  (Dougherty Aff. ¶ 16, Ex. 8,

§ 2.1; id., Attachment "A"; see also id. § 7.2 (providing that the Grande Palisades

Participation Agreement is binding upon all successors and assigns); Compl., ¶ 128;

Ans., ¶ 129.)

      In the fall of 2009, through a series of assignments, OSM became the lead lender

and servicer of the Lake Austin Loan.  (Dougherty Aff. ¶¶ 5-8; Comp., ¶ 66; Ans., ¶ 67.)

OSM remained the servicer and lead Lender for the Lake Austin Loan and Participation

Agreement until June 20, 2013, when the promissory note evidencing the Loan was sold

to an unrelated third party.  As part of the note sale, OSM retained the rights to pursue

this action on behalf of the Lender and the Loan participants.  (Dougherty Aff. ¶ 15.)

**C.**    **LNV's Legal Claims Against BFN And OSM**

      On July 17, 2013, LNV started this action by serving a Complaint on OSM and

BFN.  LNV asserts the following legal claims against OSM and BFN:

      Count I – Declaratory Judgment (Against OSM and BFN):  LNV asks the Court to

enter declaratory judgment determining and declaring that, under FIRREA, OSM cannot

assert any claims against LNV related to the Lake Austin Participation that arose before

the FDIC assigned it to LNV.  (See Comp., ¶ 85.)

      Count II – Declaratory Judgment (Against BF-Negev):  LNV asks the Court to

enter declaratory judgment determining and declaring that LNV is entitled to certain

distributions of loan proceeds under the Bahia Participation Agreement and BFN may not offset those distribution payments by the amounts LNV owes OSM under the Lake Austin Participation Agreement.  (See Comp., ¶ 89.)

Count III – Declaratory Judgment (Against OSM):  LNV asks the Court to enter declaratory judgment determining and declaring that LNV is entitled to certain distributions of loan proceeds under the Lake Austin Participation Agreement.  (See Comp., ¶ 97.)

Count IV – Breaches of the Bahia River Loan Participation Agreement (Against BFN):  LNV alleges that the Bahia Participation Agreement "is a valid, enforceable contract between BF-Negev and LNV."  (Comp., ¶ 100.)  LNV claims that BFN breached the Bahia Participation Agreement by failing to make certain distributions of loan proceeds to LNV.  (Id., ¶¶ 102-04.)

Count V – Civil Theft/Conversion (Against BFN and OSM):  LNV claims OSM and BFN are liable for civil theft and conversion based on their failure to make distributions of loan proceeds that LNV alleges were due under the Bahia Participation Agreement.  (Comp., ¶ 109.)  LNV seeks punitive damages under Minn. Stat. §§ 549.191, 549.20, and 604.14 for this claim.  (Id., ¶ 114.)

Count VI – Unjust Enrichment/Quantum Meruit (Against BFN and OSM):  LNV claims OSM and BFN have been unjustly enriched based on their failure to make distributions of loan proceeds that LNV alleges were due under the Bahia Participation Agreement.  (Compl., ¶ 120.)

Count VII – Constructive Trust (Against BF-Negev and OSM):  LNV alleges the Bahia Participation Agreement gives rise to a confidential and fiduciary relationship between LNV and BFN.  (Comp., ¶ 122.)  As a result, LNV claims it is entitled to a constructive trust for distributions of loan proceeds that LNV alleges were due under the Bahia Participation Agreement.  (Id., ¶ 126.)

Count VIII – Breach of Contract (Against OSM):  LNV alleges that the Lake Austin Participation Agreement "is a valid, enforceable contract between OSM and LNV."  (Comp., ¶ 128.)  LNV claims OSM breached the Lake Austin Participation Agreement by failing to make certain distributions of loan proceeds to LNV.  (Id., ¶¶ 130-32.)

Count IX – Civil Theft & Conversion (Against OSM):  LNV claims that OSM is liable for civil theft and conversion based on its failure to make distributions of loan proceeds that LNV alleges were due under the Lake Austin Participation Agreement.  (Comp., ¶ 137.)

Count X – Unjust Enrichment/Quantum Meruit (Against OSM):  LNV claims that OSM has been unjustly enriched based on OSM's failure to make distributions of loan proceeds that LNV alleges were due under the Lake Austin Participation Agreement.  (Comp., ¶ 147.)

Count XI – Constructive Trust (Against OSM):  LNV alleges that the Lake Austin Participation Agreement gives rise to a confidential and fiduciary relationship between LNV and OSM.  (Comp., ¶ 150.)  As a result, LNV claims it is entitled to a constructive

trust for distributions of loan proceeds that LNV alleges were due under Lake Austin Participation Agreement.  (Id., ¶ 153.)

OSM and BF-Negev now move for summary judgment on Counts V, VI, VII, IX, X and XI of LNV's Complaint.

## ARGUMENT

## I.    SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(b), a party may at any time "move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part" of any claims asserted against the party.  Fed. R. Civ. P. 56(b).  Summary judgment should be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The nonmoving party may not avoid summary judgment merely by showing that some facts are in dispute; rather, it must establish that there are factual issues sufficient to permit a rational trier of fact to find in its favor.  Anderson, 477 U.S. at 247-48.  Moreover, the nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial."  Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**II.   THE COURT SHOULD ENTER SUMMARY JUDGMENT DISMISSING LNV'S NON-CONTRACTUAL CLAIMS RELATED TO THE BAHIA PARTICIPATION (COUNTS V, VI, AND VII)**

The Court should enter partial summary judgment dismissing LNV's non-contractual claims related to the Bahia Participation (Counts V, VI and VII of LNV's Complaint).   The parties agree that LNV's rights and remedies with respect to the Bahia Participation are governed by the plain terms of a valid, written contract – the Bahia Participation Agreement.   As a result, LNV's equitable and tort claims based on the Bahia Participation fail as a matter of law and should be dismissed.

**A.   The Court Should Dismiss LNV's Civil Theft/Conversion Claim Related to the Bahia Participation (Count V)**

The Court should dismiss LNV's civil theft/conversion claim[2] related to the Bahia Participation (Count V) because the gravamen of LNV's claim is for breach of the Bahia Participation Agreement.

The Bahia Participation Agreement is governed by Minnesota law.   (Dougherty Aff. Ex. 4; § 8.4.)   In Minnesota, "[a] malicious or bad-faith motive in breaching a contract does not convert a contract action into a tort action."   Wild v. Rarig, 234 N.W.2d 775, 790 (Minn. 1975).   "When the gravamen of the complaint is the breach of contract, the plaintiff may not recover tort damages."   McNeill & Assocs., Inc. v. ITT Life Ins. Corp., 446 N.W.2d 181, 185 (Minn. Ct. App. 1989).   See also Hein v. Schaffer, 1993 WL 319036, *3 (Minn. Ct. App. Aug. 24, 1993).   Courts routinely reject conversion

---

[2] Minnesota courts refer to civil theft and conversion interchangeably.   See Williamson v. Prasciunas, 661 N.W.2d 645, 652 (Minn. Ct. App. 2003) (referring to civil theft under Minn. Stat. § 604.14 as "conversion").

claims that are essentially breach of contract claims.  See <u>United Prairie Bank-Mountain Lake v. Haugen Nutrition & Equipment, LLC</u>, 782 N.W.2d 263, 273 (Minn. Ct. App. 2010), <u>rev'd on other grounds</u>, 813 N.W.2d 49 (Minn. 2012) (affirming dismissal of conversion claim, where plaintiff's only remedy was in contract); <u>McNeill</u>, 446 N.W.2d at 185 ("Because McNeill's cause of action centers around this breach of contract, we hold that the trial court erred by finding that ITT's actions constituted conversion."); <u>City of Minneapolis v. Time Warner Cable, Inc.</u>, 2005 WL 3036645, *7 (D. Minn. Nov. 10, 2005) ("Although Minneapolis argues its claim sounds solely in tort, its conversion claim could not stand but for the existence of the contract. . . . Because Minneapolis' claim arises from the contract, the conversion claim must be dismissed.").

    LNV's civil theft/conversion claim is a breach of contract claim under a different name.  LNV claims that BFN and OSM converted certain payments to which LNV claims it is the rightful owner "as set forth in more detail in the Bahia River Loan Participation Agreement."  (Comp., ¶ 109.)  As LNV admits in its pleading, its claim depends on, and arises from, a written contract – the Bahia Participation Agreement. This admission is binding as a matter of law.  <u>State Farm Mut. Auto. Ins. Co. v. Worthington</u>, 405 F.2d 683, 686 (8th Cir. 1968) (a judicial admission acts as a substitute for evidence in regard to the subject matter of the admission); <u>National Sur. Corp. v. Ranger Ins. Co.</u>, 260 F.3d 881, 886 (8th Cir. 2001) (factual statements made in a party's pleadings are generally binding on that party); <u>Missouri Housing Dev. Com'n v. Brice</u>, 919 F.2d 1306, 1314 (8th Cir. 1990) (admissions contained in pleadings are sufficient to support a motion for summary judgment).  As such, LNV is limited to contractual

remedies and cannot pursue a civil theft/conversion cause of action.  See United Prairie

Bank, 782 N.W.2d at 273; McNeill, 446 N.W.2d at 185; City of Minneapolis, 2005

WL 3036645, at *7.

LNV has no legal basis to seek punitive damages or any other civil theft or

conversion-based remedy.  "[E]ven a malicious or bad-faith motive in breaching a

contract does not convert a contract action into a tort action sufficient to support . . .

extra-contractual damages, such as punitive damages[.]"  Lickteig v. Alderson, Ondov,

Leonard & Sween, P.A., 556 N.W.2d 557, 561 (Minn. 1996); see also United Prairie

Bank, 782 N.W.2d at 273 (affirming rejection of punitive damages for conversion claim

based on breach of contract); McNeill, 446 N.W.2d at 185 (reversing award of punitive

damages for conversion claim based on breach of contract).  Under the terms of the Bahia

Participation Agreement, LNV is not permitted recover consequential damages arising

from a violation of that agreement.  (Dougherty Aff. Ex. 4, § 6.)  LNV certainly cannot

recover punitive damages for a breach of the Agreement.  Accordingly, the Court should

dismiss LNV's civil theft/conversion claim in its entirety, including its request for

punitive damages.

### B.    The Court Should Dismiss LNV's Unjust Enrichment/Quantum Meruit Claim Related to the Bahia Participation (Count VI)

Likewise, the Court should dismiss LNV's unjust enrichment/quantum meruit

claim related to the Bahia Participation (Count VI).  Under Minnesota law, "proof of an

express contract precludes recovery in quantum meruit."  Sharp v. Laubersheimer, 347

N.W.2d 268, 271 (Minn. 1984) (quoting Breza v. Thaldorf, 149 N.W.2d 276, 279 (Minn.

1967)); see also United Prairie Bank, 782 N.W.2d at 273 (affirming dismissal of unjust enrichment claim because the parties had an express contract).

Here, all parties agree that the Bahia Participation Agreement is a binding and enforceable contract.  (Comp., ¶ 100; Ans., ¶ 101.)  With the existence and validity of the written agreement no longer in dispute, LNV's unjust enrichment/quantum meruit claim fails as a matter of law and should be dismissed.

### C.     The Court Should Dismiss LNV's Constructive Trust Claim Related to the Bahia Participation (Count VII)

The Court should dismiss LNV's constructive trust claim related to the Bahia Participation (Count VII).  "The elements of a cause of action to enforce a constructive trust are the existence of a fiduciary relation and the abuse by defendant of confidence and trust bestowed under it to plaintiff's harm."  Peterson v. Holiday Recreational Indus., Inc., 726 N.W.2d 499, 507 (Minn. Ct. App. 2007).  Without a fiduciary relationship, claims for a constructive trust must be dismissed.  Id. (reversing trial court's finding of constructive trust because no fiduciary relationship existed).

Leonard v. Dorsey & Whitney LLP, 553 F.3d 609 (8th Cir. 2009) is on point.  In Leonard, the Eighth Circuit Court of Appeals concluded that a participation agreement that was substantially similar to the Bahia Participation Agreement did not create a fiduciary relationship between a participant and the law firm representing the lead lender for the participation.  The participation agreement at issue in Leonard defined the parties' relationship as "that of a seller and purchaser of a property interest."  Id. at 614.  The participation agreement further stated that the Participant, "without reliance on Lender

and based on such documents as the Participant has deemed appropriate, made its own credit analysis and decision to purchase its participation interest in the Loan." Id. at 615. The participation agreement did not guarantee the Participant would be repaid. Instead, the agreement merely obligated the Lender to administer the Loan "in accordance with the customary policies and procedures under which it administers loans for its own account." Id. When the deal later went south, the participant argued that the Lender owed it fiduciary duties. Id. at 624.

The Eighth Circuit Court of Appeals disagreed with the participant and decided there was no fiduciary relationship between the parties. Leonard, 553 F.3d at 624-27. After reviewing a recent Minnesota Supreme Court decision and legal authority in other jurisdictions, the court predicted that Minnesota law would "not grant [the participant] any protection beyond the express terms of the Participation Agreement." Id. at 626 (emphasis added). As defined in the participation agreement, the relationship was not unusually close. Id. Moreover, the Lender's contractual obligation to protect the Participant's interests "in accordance with customary policies and procedures under which it administers loans for its own account" imposed a lower standard of care "than what is ordinarily imposed on fiduciaries." Id. The court concluded that, due to the "arm's-length nature" of the Participation Agreement, the Lender "could administer the loan with its own interests at heart" – which was inconsistent with the establishment of a fiduciary relationship. Id.

Courts around the country have reached a similar result. See Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank, 57 F.3d 146, 158 (2d Cir. 1995)

(denying the existence of a fiduciary relationship between participating bank and lead lender); First Citizens Fed. Sav. & Loan Ass'n v. Worthen Bank & Trust Co., N.A., 919 F.2d 510, 514 (9th Cir. 1990) (same); Banco Espanol de Credito v. Sec. Pac. Nat. Bank, 763 F. Supp. 36, 45 (S.D.N.Y. 1991), aff'd, 973 F.2d 51 (2d Cir. 1992) (same); N. Trust Co. v. Fed. Deposit Ins. Corp., 619 F. Supp. 1340, 1344 (W.D. Okla. 1985) (same); In re Colocotronis Tanker Sec. Litig., 449 F. Supp. 828, 833 (S.D.N.Y. 1978) (same); 330 Acquisition Co., LLC. v. Regency Sav. Bank, F.S.B., 306 A.D.2d 154, 155 (N.Y. App. Div. 2003) (same); First Bank of Wakeeney v. Peoples State Bank, 758 P.2d 236, 240 (Kans. Ct. App. 1988) (same).

The Court should reach the same conclusion with respect to the Bahia Participation Agreement.  The Agreement does not create any "special" or "fiduciary" relationship between LNV and BFN.  To the contrary, it expressly "creates a participation in the Credit and the Credit Agreements only."  (Dougherty Aff. Ex. 4, § 4.2(b).)  The Bahia Participation Agreement also states that LNV is making decisions regarding the Bahia Participation "independently and without reliance upon" BFN.  (Id., § 3.1(c).)  The Agreement does not impose any extraordinary standard of care on OSM.  At most, the Agreement requires BFN to "exercise that degree of care that would ordinarily be exercised by lenders administering a construction loan and otherwise in accordance with the usual practices and procedures employed by [BFN] on similar accounts in which it has no participants."  (Id., § 4.2(c).)  That language is practically the same as the language the Eighth Circuit Court of Appeals found insufficient to create a fiduciary relationship in Leonard.  Leonard, 553 F.3d at 627.

17

LNV is likely to argue that the Bahia Participation Agreement creates an agency relationship between LNV and BFN and as a result, BFN did owe broad fiduciary duties to LNV.  (See Comp. ¶¶ 19A, 122, 123.)  LNV's expected argument must fail. Notwithstanding the creation of a nominal "agency" relationship between lead lender and participant (i.e., as collecting agent), the relationship does not impose fiduciary obligations upon the lead lender.  Northern Trust Co. v. FDIC, 619 F. Supp. 1340, 1344-45 (W.D. Okla. 1985).  Rather, the obligations (and the remedies for a breach thereof) are solely as defined in the contract.  See id.

Based on the foregoing, this Court should conclude as a matter of law that LNV and BFN have an arm's-length contractual relationship.  The parties lack the fiduciary relationship necessary to support LNV's constructive trust claim and accordingly, Count VII should be dismissed.

## III.    THE COURT SHOULD ENTER SUMMARY JUDGMENT DISMISSING LNV'S NON-CONTRACTUAL CLAIMS RELATED TO THE GRANDE PALISADES PARTICIPATION (COUNTS IX, X AND XI)

The Court should also enter partial summary judgment dismissing LNV's non-contractual claims related to the Lake Austin Participation (Counts IX, X and XI of LNV's Complaint).  The Lake Austin Participation is governed by New York law. (Dougherty Aff. Ex. 8, § 7.5(a).)  Under New York law, LNV's rights and remedies with respect to the Lake Austin Participation are limited to the terms of the Participation Agreement.  LNV's equitable and tort claims based on the Lake Austin Participation fail as a matter of law and should be dismissed.

**A.    The Court Should Dismiss LNV's Civil Theft & Conversion Claim Related to the Grande Palisades Participation (Count IX)**

The Court should dismiss LNV's civil theft and conversion claim related to the Grande Palisades Participation (Count IX).  New York law is well settled that a cause of action for conversion "cannot be predicated on a mere breach of contract."  Fesseha v. TD Waterhouse Investor Servs., Inc., 305 A.D.2d 268, 269 (N.Y. App. Div. 2003); Wolf v. Nat'l Council of Young Israel, 264 A.D.2d 416, 417 (N.Y. App. Div. 1999); Priolo Commc'ns, Inc. v. MCI Telecommunications Corp., 248 A.D.2d 453, 454 (N.Y. App. Div. 1998); MBL Life Assur. Corp. v. 555 Realty Co., 240 A.D.2d 375, 376 (N.Y. App. Div. 1997).

Contrary to New York law, LNV's civil theft and conversion claim against OSM is based entirely on an alleged breach of the Lake Austin Participation Agreement.  To be sure, LNV alleges in support of its claim that OSM "intentionally took and/or possesses money that rightfully belongs to LNV . . . as set forth in more detail in the [Lake Austin] Loan Participation Agreement."  (Comp., ¶ 137.)  By LNV's own words, LNV's conversion claim is "predicated on a mere breach of contract."  See Fesseha, 305 A.D.2d at 269.  Accordingly, LNV's conversion claim cannot stand.[3]

**B.    The Court Should Dismiss LNV's Unjust Enrichment/Quantum Meruit Claim Related to the Grande Palisades Participation (Count X)**

For a similar reason, the Court should dismiss LNV's unjust enrichment/quantum meruit claim related to the Lake Austin Participation (Count X).  "The theory of unjust

---

[3] LNV's claim also fails because the Lake Austin Participation Agreement disclaims any extra-contractual damages for a breach of the Agreement.  (Dougherty Aff. Ex. 8, § 5.)

enrichment lies as a quasi-contract claim.  It is an obligation the law creates in the absence of any agreement."  Goldman v. Metro. Life Ins. Co., 841 N.E.2d 742, 746-47 (N.Y. 2005).  "The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter."  Clark-Fitzpatrick, Inc. v. Long Island R. Co., 516 N.E.2d 190, 193 (N.Y. 1987); see also R.I. Island House, LLC v. N. Town Phase II Houses, Inc., 51 A.D.3d 890, 896 (N.Y. App. Div. 2008).  If the terms of a written contract control an issue, "there is no valid claim for unjust enrichment."  Goldman, 841 N.E.2d at 746-47.

Here, LNV and OSM agree that the Lake Austin Participation Agreement is a binding and enforceable contract.  (Comp., ¶ 128; Ans., ¶ 129.)  The terms of that Agreement control LNV's claims arising out of the Lake Austin Participation.  (See Dougherty Aff. Ex. 8, § 7.9 (providing that the Lake Austin Participation Agreement represents the "entire understanding" between the parties with respect to the Grande Palisades Participation).)  As a matter of law, LNV has no valid cause of action for unjust enrichment/quantum meruit.  See Goldman, 841 N.E.2d at 746-47.

### C.    The Court Should Dismiss LNV's Constructive Trust Claim Related to the Grande Palisades Participation (Count XI)

The Court should also dismiss LNV's constructive trust claim related to the Grande Palisades Participation (Count XI).  "The usual elements of a constructive trust are (1) a confidential or fiduciary relationship, (2) a promise, (3) a transfer in reliance thereon, and (4) unjust enrichment."  O'Brien v. Dalessandro, 43 A.D.3d 1123, 1124

(N.Y. App. Div. 2007). A constructive trust claim should be dismissed in the absence of a fiduciary relationship. See First Keystone Consultants, Inc. v. DDR Const. Servs., 74 A.D.3d 1135, 1138 (N.Y. App. Div. 2010) (affirming dismissal of constructive trust claim where there was no fiduciary relationship).

Under New York law, it is well established that "banks who participate in loans together are not fiduciaries, but act at arm's length. Any fiduciary duties between banks participating in a loan must be created by 'unequivocal language' in the participation agreement." 330 Acquisition, 306 A.D.2d at 155 (citations omitted). See also Banque Arabe, 57 F.3d at 158 ("Generally, banking relationships are not viewed as special relationships giving rise to a heightened duty of care. . . . This same principle applies to loan participation agreements, in which there is deemed to be no fiduciary relationship unless expressly and unequivocally created by contract."); Banco Espanol, 763 F. Supp. at 45 ("In the case of arm's length transactions between large financial institutions, no fiduciary relationship exists unless one was created in the agreement."); In re Colocotronis Tanker, 449 F. Supp. at 833 ("[Participation] agreements are arms-length contracts between relatively sophisticated financial institutions and do not establish fiduciary relationships[.]"). Accord Leonard, 553 F.3d at 624-27 (deciding participation agreement did not create fiduciary relationship); First Citizens, 919 F.2d at 514 (same); N. Trust Co., 619 F. Supp. at 1344 (same); First Bank of Wakeeney, 758 P.2d at 240 (same).

Here, the language of the Lake Austin Participation Agreement explicitly disclaims any fiduciary relationship between LNV and OSM. Section 3.2(b) plainly

states that the Agreement "creates a participation interest…and shall not be interpreted or construed…to form a partnership joint venture <u>or other special relationship of any kind or nature</u> between" LNV and OSM.  (Dougherty Aff. Ex. 8, § 3.2(b)) (emphasis added).)  Section 2.1 confirms that LNV continues to make decisions about the Lake Austin Participation "without reliance of any kind or nature on" OSM, and OSM "MAY ACT IN ITS OWN INTERESTS…EVEN IF SUCH ACTIONS ARE DETRIMENTAL TO THE INTERESTS OF" LNV.  (<u>Id.</u>, § 2.1(c), (d), (l).)  Nothing in the Lake Austin Participation Agreement imposes fiduciary duties on OSM.  Without a fiduciary relationship, LNV's constructive trust claim fails as a matter of law.

## <u>CONCLUSION</u>

LNV has no legal basis to convert this relatively simple contract case into a messy tort action.  To keep this case on the proper track, the Court should grant OSM's motion for partial summary judgment and dismiss Counts V, VI, VII, IX, X and XI of LNV's Complaint.

ANTHONY OSTLUND BAER
 & LOUWAGIE P.A.

Dated:  June 30, 2014

By: _ *s/ Aaron R. Hartman* _____
   Aaron R. Hartman (#320195)
   Philip J. Kaplan (#0389351)
3600 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402
Telephone:  (612) 349-6969
Facsimile:   (612) 349-6996

ATTORNEYS FOR DEFENDANTS