## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

LNV Corporation, a Nevada corporation,

        Plaintiff,

v.

Outsource Services Management, LLC, a
Nevada limited liability company d/b/a
Presidium Asset Solutions; and BF-Negev,
LLC, a Minnesota limited liability
company,

        Defendants.

Court File No. 13-cv-1926 (JNE/LIB)

**REPLY MEMORANDUM IN
FURTHER SUPPORT OF
DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT**

## <u>INTRODUCTION</u>

LNV Corporation's ("LNV") response to Defendants' Motion for Summary

Judgment invites yet another unnecessary and expensive distraction from the merits of

the case.  No matter how much discovery is ultimately taken, this is not a tort case.  This

is a contract case.

In one of the pertinent contracts, the 2007 Participation Agreement, LNV's

predecessor in interest (The Columbian Bank & Trust Company) expressly disclaimed

any reliance upon Outsource Services Management, LLC's ("OSM") predecessor in

interest (Marshall Bank) in making its decision to purchase the participation interest at

issue.  Having expressly disclaimed this essential element of fraud in the inducement,

LNV cannot use the defense to avoid summary judgment.  In another pertinent contract,

the 2009 Loan Sale Agreement, LNV's predecessor in interest (the FDIC, as Receiver for

Columbian) expressly reserved for itself (not LNV) "any and all claims of any nature whatsoever…against any third parties involved in any alleged fraud or other misconduct relating to the making or servicing of a Loan…"  Having bargained away the right to assert claims sounding in fraud, LNV cannot use the defense to avoid summary judgment.  In still another pertinent contract, a September 2009 assignment between Marshall and OSM, Marshall retained all obligations, claims, and other liabilities arising from (among other things) the "making of" the Loan, as well as the "sale of any interest" in the Loan.

Even if these contracts did not exist, the participation agreement is not the kind of contract capable of being voided (i.e., rescinded) under New York law.  The history between these parties, their respective predecessors in interest, and the underlying borrower is simply too complicated to place all of the necessary parties in their respective pre-contract positions.

Finally, both parties to this case have alleged and admitted the existence and validity of the Participation Agreement in their respective pleadings.  The matter is undisputed.  While the liberal pleading standards of Rule 8 permitted LNV to assert alternative theories in its initial pleading, once OSM admitted the existence and validity of the Participation Agreement, LNV lost the right to assert tort and quasi-contractual theories.

For these reasons, there is no need to take extensive discovery relating to LNV's non-contractual claims or its purported "fraud in the inducement" defense.  The claim fails as a matter of law.  The Court should therefore enter partial summary judgment in

OSM and BF-Negev, LLC's ("BFN") favor and dismiss Counts V, VI, VII, IX, X and XI of LNV's Complaint.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

**A.    Columbian Purchases The Participation Pursuant To A Written Participation Agreement.**

Having already heard and decided several motions, this Court is familiar with the background facts of this case.[1]  As the Court is aware, Columbian's participation interest in the Loan was governed by a written Participation Agreement.  (See Affidavit of Brian Dougherty 6/30 Aff. Ex. 8) [Dkt. #91].  In § 2.1 of the Participation Agreement, Columbian not only represented and agreed that it had received all of the information needed to perform its due diligence about the Loan, Columbian also expressly disclaimed any reliance on Marshall in making its decision to purchase the Participation.  In this regard, the Participation Agreement states:

> b.  [Columbian] **has been granted access to, and received all of, the information it has requested or believed to be necessary** to enable it to make an **independent** and informed judgment with respect to the creditworthiness of the Obligor including information provided to [Columbian] by [Marshall];
>
> c.  [Columbian] has, **without reliance of any kind or nature on [BankFirst]**, any other Credit Provider or the directors, officers, agents, employees or attorneys of [Marshall], and **instead in reliance upon information supplied to it by or on behalf of the Obligor** and upon such other information as [Columbian] has deemed appropriate, **made its own independent credit analysis and decision** to purchase its Participation Interest in the Credit;

---

[1] OSM incorporates by reference the fact sections of its memoranda and supporting Affidavits filed with the Court on September 20, 2013 [Dkt. #14, 15 and 16], January 16, 2014 [Dkt. #62, 63 and 64], and June 30, 2014 [Dkt. #90 and 91].

d.  [Columbian] will, **independently and without reliance of any kind or nature on [Marshall]**, any other Credit Provider or the directors, officers, agents, employees or attorneys of the Lender, **continue to make its own independent credit analysis and decisions** in acting or not acting under this Agreement and the Credit Agreements;

***

g.  [Columbian] acknowledges that [Marshall] has made no guaranty of repayment and [Columbian] is **assuming the risk of loss** which is inherent with the Credit, lending in general, and the administration of loans, it being understood that [Columbian] **will look only to the Obligor, and the Collateral**, if any, for repayment of the Credit.

[Dkt. #91, Ex. 8, § 2.1(b)-(d), (g) (emphasis added).]  In § 2.2 of the Participation

Agreement, Columbian further represented and agreed that:

[COLUMBIAN] EXPRESSLY ACKNOWLEDGES THAT, EXCEPT AS SET FORTH ABOVE IN THIS SECTION 2.2, **LENDER HAS NOT MADE AND IS NOT MAKING TO PARTICIPANT ANY REPRESENTATION OR WARRANTY**, EXPRESS OR IMPLIED, WITH RESPECT TO THE CREDIT, THE CREDIT AGREEMENTS, THE OBLIGOR OR THE COLLATERAL…AND LENDER ASSUMES **NO RESPONSIBILITY FOR THE FINANCIAL CONDITION OF ANY OBLIGOR OR ANY GUARANTOR**…[COLUMBIAN]… ACKNOWLEDGES THAT IT IS REQUIRED BY APPLICABLE STATUTES AND REGULATIONS TO **CONDUCT ITS OWN DUE DILIGENCE AND CREDIT ANALYSIS** IN CONNECTION WITH ITS ACQUISITION OF THE PARTICIPATION INTEREST, AND IT REPRESENTS THAT IT **HAS CONDUCTED** THE SAME TO ITS FULL SATISFACTION…

[Id. at § 2.2. (ALLCAPS in original; emphasis added).]

**B.    Columbian Bank Fails, And The Participation Is Sold To LNV.**

On August 22, 2008, the Kansas Office of the State Bank Commissioner closed

Columbian.  (Affidavit of Ralph S. Wheatly, dated August 30, 2013, Ex. 1) [Dkt. #10].

The FDIC was named Receiver (the "FDIC-R") and succeeded to all of the rights, titles,

powers and assets of Columbian, including Columbian's interest in the Participation.  See 12 U.S.C. § 1821(d)(2)(A)(i).

On September 30, 2009, the FDIC-R sold the Participation to LNV.  (See Affidavit of Brian Dougherty, dated June 30, 2014, Ex. 9) [Dkt. #91].  The transaction was evidenced by a written Loan Sale Agreement (the "Loan Sale Agreement").  [Id.] Pursuant to § 2.1 of the Loan Sale Agreement, the FDIC-R sold "all the right, title and interest" of the FDIC-R in and to the Participation "on the terms and subject to the conditions set forth in this Agreement…"  [Id. § 2.1]

Those "conditions" provide that the FDIC-R retained certain, expressly enumerated rights relating to the participation, including claims asserting that the originator of the Loan (i.e., Marshall) engaged in fraud:

> [LNV] and [FDIC-R] agree that the sale of Loans pursuant to this Agreement will **exclude the transfer** to [LNV] of all right, title and interest of [FDIC-R] in and to **any and all claims of any nature whatsoever** that might now exist or hereafter arise, whether known or unknown, that [FDIC-R] has or might have…against **any third parties involved in any alleged fraud or misconduct relating to the making or servicing of a Loan**…

[Id. § 2.7. (emphasis added).]

## C.    Marshall Assigns Its Interest As Lead Lender To OSM.

OSM became the lead "Lender" for the Lake Austin Loan and Participation Agreement through an assignment executed in September of 2009.  (Affidavit of Brian Dougherty, filed September 20, 2013, ¶ 10) [Dkt. #15].  The assignment is evidenced by a written agreement in which Marshall assigned to OSM all of its "right, title and interest in, to and under the Loan Documents" for the Lake Austin Loan, including "all of

[Marshall's] rights thereunder."  (Declaration of Todd Moore, respectfully submitted herewith ("Moore Decl."), at Ex. 1 § 1.)

OSM accepted the assignment subject to express limitations on the liabilities being transferred, namely, that Marshall (not OSM) would remain liable for obligations, claims, and other liabilities arising from (among other things) the "making of" the Loan, as well as the "sale of any interest" in the Loan.  The pertinent language of the Assignment Agreement reads as follows:

> "…Assignee does not and shall not be deemed to have assumed or agreed to pay or perform any duty, obligation or liability of Assignor…arising under or related in any manner whatsoever to…**the making of any Loan** under the Loan Documents, [or] **the sale of any interest in the Loans**…"
>
> "…Assignee will not be required to assume or pay, and will have no responsibility to pay, perform or discharge any duty, obligation or liability of the Assignor under or related to any Loan Document, any Loan, **the making of a Loan** under any Loan Document, [or] **the sale of any interest in a Loan**…"
>
> "…Assignee does not assume impliedly, and shall not be deemed or construed to have assumed impliedly any duty, obligation or liability of the Assignor…related in any manner whatsoever to the **Loan Documents, the Loans, [or] the sale of any interest in a Loan**…"

(Id. §§ 2, 3.)

Effective as of November 5, 2009, Marshall and OSM signed an Amended and Restated Assignment Agreement which contained materially similar limitations.  (See id., Ex. 2 §§ 2, 3.)

**D.    There Is No Dispute:  The Participation Agreement Is Valid And Enforceable.**

Like most commercial cases, this matter started with a demand letter.  OSM outlined its position by letter dated July 2, 2013, and demanded a response within ten

6

days.  (Affidavit of Aaron R. Hartman, respectfully submitted herewith, Ex. A.)  Rather than pay the amount demanded, LNV preemptively started this litigation.

LNV's Complaint is dated July 17, 2013.  [Dkt. #1.]  The Complaint alleges that OSM breached the Participation Agreement when it "failed and refused…to perform its obligations owed to LNV under the Grande Palisades Loan Participation Agreement." [Dkt. #1 ¶ 130.]  Similar allegations appear throughout the Complaint.  [Dkt. #1 ¶¶ 1, 12, 43-44, 92, 97, 98, 130.]  As if there was any room for doubt about LNV's position, paragraph 127 of the Complaint also clearly and unequivocally states that, the "Grande Palisades Loan Participation Agreement is a valid, enforceable contract between OSM and LNV."  [Dkt. #1 ¶ 128.]

OSM's Answer to LNV's Complaint is equally clear and unequivocal:  "OSM admits the allegations of paragraph 127 of the Complaint."  (Answer and Counterclaims ¶ 129) [Dkt. #6].

**E.    LNV's Response To OSM's Summary Judgment Motion.**

In an effort to avoid dismissal of its non-contractual claims, LNV has relied almost exclusively on the dubious theory that its predecessor in interest, Columbian, was fraudulently induced into signing the Participation Agreement.  To be clear, LNV does not offer any facts suggesting that **LNV** was defrauded into purchasing the Participation. LNV purchased its interest in the Participation from the FDIC-R; LNV is certainly not claiming that it has been duped by a Federal regulatory agency.  Rather, LNV contends that **Columbian** may have been defrauded.  Similarly, although LNV uses the terms "OSM" and "Marshall" interchangeably throughout its briefing, LNV does not offer any

facts to suggest that **<u>OSM</u>** made fraudulent statements in connection with the origination of the Loan or the sale of the Participation to Columbian. Rather, LNV contends that **<u>Marshall</u>** is the party responsible for the alleged fraud.

LNV evidently learned about its fraud in the inducement "defense" through a review of court pleadings in a case pending in the Middle District of Florida since November of 2009 (the "Florida Collection Action"). Clearly, that case has been highly contentious. The case has been pending since 2009, and the court docket consists of "approximately 880 docket entries." (Affidavit of C. Schoenwetter, filed July 29, 2014 ("Schoenwetter Aff.") ¶ 22, Exs. 14 and 15) [Dkt. #98].

Although some of the docket entries that LNV relies upon in support of its defense have been available to the public since January of 2013 – several months before this litigation began – LNV's Complaint in this proceeding said nothing about any alleged "fraud in the inducement." LNV instead asserted its fraudulent inducement theory as an "Affirmative Defense" in its Answer to OSM's Counterclaims. [<u>See</u> Dkt. #81.] Although LNV's pleading does not describe the specific relief being requested, LNV's Memorandum of Law in Opposition to the Motion for Summary Judgment states that the appropriate remedy for fraud in the inducement is to "void (i.e., rescind)" the Participation Agreement. [Dkt. #96 p. 25.] In other words, LNV's fraud in the inducement defense seeks affirmative relief rather than to simply avoid liability under the contract.

## ARGUMENT

**I.    RULE 56(d) DOES NOT PREVENT SUMMARY JUDGMENT WHERE JUDGMENT CAN BE ENTERED AS A MATTER OF LAW.**

Continuances under Rule 56(d) are inappropriate where a summary judgment motion can be decided as a matter of law. Humphreys v. Roche Biomedical Labs., Inc., 990 F.2d 1078, 1081 (8th Cir. 1993) (granting summary judgment despite request for a continuance because plaintiff did not show how the evidence sought "might overcome the facially time-barred complaint"); U.S. ex. Small Bus. Admin. v. Light, 766 F.2d 394, 398 (8th Cir. 1985) (granting summary judgment enforcing written guaranty despite request for a continuance because "[e]ven if [defendant] had been given additional time to conduct discovery and had obtained testimony which appeared to contradict the written guaranty agreement, the parol evidence rule would have barred…that testimony").

Thus, "it is not an abuse of discretion for a district court to grant summary judgment before the opposing party has conducted any discovery…if that party does not demonstrate how discovery will provide rebuttal to the movant's claims." Alexander v. Pathfinder, Inc., 189 F.3d 735, 744 (8th Cir. 1999); see also Washington v. Hollis, 187 F.3d 645 (8th Cir. 1999) ("the District Court did not abuse its discretion in denying further discovery before ruling on the summary judgment motion because the facts Washington sought to obtain would not have prevented the entry of summary judgment").

Here, summary judgment should be granted without delay because LNV seeks discovery related to a defense – fraud in the inducement – upon which it cannot rely as a matter of law. The defense fails for numerous reasons. First, LNV's predecessor-in-

9

interest, Columbian, disclaimed reliance on any representations by OSM's predecessor-in-interest, Marshall.  Second, LNV's predecessor in interest, the FDIC-R, retained the sole right to assert claims sounding in fraud against third parties such as Marshall or OSM.  Third, LNV requested remedy for fraud in the inducement – rescission of the contract – is not feasible under the circumstances presented here.  Fourth, Marshall alone retained any liability related to the making of, or selling an interest in, the Lake Austin Loan.  Fifth, OSM and its predecessors-in-interest owed no fiduciary duties to LNV or its predecessors-in-interest.  Finally, LNV's argument that the contract should be voided for fraud in the inducement is directly contrary to its prior admissions in pleadings admitting that the contract is valid and enforceable.

## II.    LNV'S FRAUD IN THE INDUCEMENT DEFENSE FAILS AS A MATTER OF LAW BECAUSE COLUMBIAN EXPRESSLY DISCLAIMED RELIANCE UPON MARSHALL.

### A.    New York Courts Enforce Reliance Disclaimers.

Reasonable reliance is an essential element of fraud in the inducement.  B & C Realty, Co. v. 159 Emmut Props. LLC, 106 A.D.3d 653, 655 (N.Y. App. Div. 2013) (affirming dismissal of fraudulent inducement claim for lack of reasonable reliance); Mountain Creek Acquisition LLC v. Intrawest U.S. Holdings, Inc., 96 A.D.3d 633, 634 (N.Y. App. Div. 2012) (affirming dismissal of fraud in the inducement claim due to contractual disclaimer).  Where one party to a contract specifically disclaims reliance on its counterparty, reliance on the counterparty is unreasonable as a matter of law. DynCorp v. GTE Corp., 215 F. Supp. 2d 308, 319 (S.D.N.Y. 2002) (plaintiff's disclaimers "make it impossible for it to prove one of the elements of a claim of fraud:

that it reasonably relied on the representations it alleges were made to induce it to enter into the [agreement]").

LNV claims that it may "void (i.e., rescind)" the Participation Agreement because OSM's predecessor-in-interest, Marshall, allegedly concealed a material fact from LNV's predecessor-in-interest, Columbian.  [Dkt. #96 pp. 25, 27-28.]  LNV's argument fails because Columbian represented and agreed that it was not relying on Marshall in any way.  [Dkt. #91, Ex. 8, § 2.2.]  Columbian further represented and agreed that, without reliance of <u>any kind</u> on Marshall, Columbian had made and would continue to make <u>its own</u> independent credit analysis and decision in acting under the Participation Agreement.  [<u>Id.</u> § 2.1(c)-(d).]  Columbian also acknowledged that it was assuming the risk of loss, and that Marshall was not acting as a guarantor for the Loan.  [<u>Id.</u> § 2.1(g).]  Columbian further stated that it had been granted access to and received all the information it believed necessary to make an independent decision regarding the credit worthiness of Lake Austin.  [<u>Id.</u> § 2.1(b).]

LNV now seeks to rewrite the contract and force OSM to act as guarantor for Lake Austin.  New York law does not allow for the retroactive rewriting of contracts in the manner urged by LNV.  <u>DynCorp</u>, 215 F.Supp.2d at 319; <u>Mountain Creek</u>, 96 A.D.3d at 634; <u>see</u> <u>also</u> <u>Danann Realty Corp. v. Harris</u>, 5 N.Y.2d 317, 323 (N.Y. 1959) ("the plaintiff made a representation in the contract that it was not relying on specific representations not embodied in the contract, while, it now asserts, it was in fact relying on such oral representations.  Plaintiff…is guilty of deliberately misrepresenting to the seller its true intention").

**B.    The "Peculiar Knowledge" Doctrine Does Not Apply To Sophisticated Financial Institutions That Have Contractually Allocated Risk.**

The "peculiar knowledge" doctrine does not help LNV's cause.  "[T]he peculiar-knowledge exception is designed to address circumstances where a party would face high costs in determining the truth or falsity of an oral representation, and those costs are sufficiently great to render reliance upon the representation reasonable." Warner Theatre Assocs. Ltd. P'ship v. Metro. Life Ins. Co., 149 F.3d 134, 136 (2d Cir. 1998) (internal citation omitted).  It does not apply where the contracting party could have insisted on written contract terms reflecting representations on "a deal-breaking issue." Id. "Sophisticated parties to major transactions cannot avoid their disclaimers by complaining that they received less than all information, for they could have negotiated for fuller information or more complete warranties." DynCorp, 215 F. Supp. at 322; see also Rodas v. Manitaras, 159 A.D.2d 341, 343 (N.Y. App. Div. 1990) (declining to apply peculiar knowledge doctrine where buyer had purchased business "without securing the available documentation or inserting appropriate language in the agreement for his protection"); UniCredito Italiano SPA v. JPMorgan Chase Bank, 288 F. Supp. 2d 485, 492, 500 (S.D.N.Y. 2003) (enforcing contractual disclaimer and rejecting participant bank's arguments under the peculiar knowledge doctrine).

Here, Columbian expressly represented that it had been granted access to, and received all of, the information it had requested or believed to be necessary to enable it to make an independent and informed judgment with respect to the transaction; that it had made its own credit analysis and decision to purchase its participation interest; and would continue to make its own credit analysis and decisions in acting or not acting under the

12

Participation Agreement and the Credit Agreements.  [Dkt #91, Ex. 8, § 2.1(b)-(d).]

LNV cannot rewrite the contract now.  See, e.g., Warner Theatre Assocs., 149 F.3d

at 136.

      Nor were any alleged representations regarding Lake Austin's equity contribution

practically unverifiable, making application of the doctrine inappropriate.  Warner

Theatre Assocs., 149 F.3d at 136.  A party's access to ostensibly "concealed" information

is fatal to the peculiar knowledge doctrine.  See Grumman Allied Indus., Inc. v. Rohr

Indus., Inc., 748 F.2d 729, 737 (2d Cir. 1984) ("Where sophisticated businessmen

engaged in major transactions enjoy access to critical information but fail to take

advantage of that access, New York courts are particularly disinclined to entertain claims

of justifiable reliance").

      If Columbian needed additional information, it could have requested information

(e.g.) verifying the source of its equity stake in the Lake Austin Project.  LNV points to

no evidence that Columbian requested such permission, nor can LNV point to any

evidence that Marshall refused to provide it.  Rather, LNV now seeks simply to

impermissibly shift the risk that Columbian contractually accepted on to OSM.  See

Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank, 57 F.3d 146,

158 (2d Cir. 1995) (reversing district court's application of the peculiar knowledge

doctrine, stating it was "unreasonable for Banque Arabe [e.g., the participant] to rely on

[the lead lender] to intuit Banque Arabe's sensitivity on this issue [that was allegedly

concealed] and volunteer information that Banque Arabe was not seeking").

### III.  LNV'S FRAUD IN THE INDUCEMENT DEFENSE FAILS AS A MATTER OF LAW BECAUSE THE FDIC-R RETAINED THE EXCLUSIVE RIGHT TO ASSERT A FRAUD CLAIM.

"Under New York law, absent language demonstrating an intent to do so, tort claims do not automatically pass to an assignee."  Dexia SA/NV, Dexia Holdings, Inc. v. Stanley, 980 N.Y.S.2d 275 (N.Y. Sup. Ct. 2013) (holding that assignment of "all right, title and interest" in certain contracts did not convey related fraud claims); see also Royal Mortgage Corp v. FDIC, 20 F. Supp. 2d 664, 666, 668 (S.D.N.Y. 1998) (interpreting similar loan sale agreement and concluding that no tort claims had been assigned to the purchaser of loans from the FDIC); Argyle Capital Mgmt. Corp. v. Lowenthal, Landau, Fischer & Bring, 261 A.D.2d 282, 283 (N.Y. App. Div. 1999) ("there is no indication in the assignment that the transfer of any claim, much less one for fraud, was contemplated by the parties").

Here, there is no clear language conveying any fraud claim to LNV – as would be required under New York law.  In fact, the Loan Sale Agreement expressly excluded claims sounding in fraud, including "any and all claims of any nature whatsoever that might now exist or hereafter arise, whether known or unknown, that the Seller has or might have…against any third parties involved in any alleged fraud or other misconduct relating to the making or servicing of a Loan…" [Dkt. #91, Ex. 9, § 2.7] (emphasis added).

The Loan Sale Agreement does not define the word "claim," Black's Law Dictionary defines the word to mean, among other things:

- "The aggregate of operative facts giving rise to a right enforceable by a court";

- "The assertion of an existing right; any right to…an equitable remedy, even if contingent or provisional";

- "A demand for…a legal remedy to which one asserts a right";

- "An interest or remedy recognized at law."

Black's Law Dictionary, 9th ed.

Although LNV has labeled fraudulent inducement as an "affirmative defense," in reality LNV has asserted an affirmative claim for rescission:  "In the present case, due the fraudulent inducement of OSM's predecessor in interest, Marshall…LNV may avoid (*i.e.,* rescind) the Grande Palisades Participation Agreement at its pleasure."  [Dkt. #96 p. 25.]  See also CPI Plastics, Inc. v. USX Corp., 22 F. Supp. 2d 1373, 1377 (N.D. Ga. 1995) ("Counterclaims… are readily distinguishable from affirmative defenses in that they seek affirmative relief…"); John H. Carney & Associates v. State Farm Lloyds, 376 F. Supp. 2d 697, 703 (N.D. Tex. 2005) ("An affirmative defense by definition does not seek affirmative relief"); Fed. R. Civ. P. 8(c)(2) (permitting Court to treat mistakenly designated defense as a counterclaim).

## IV.    LNV'S FRAUD IN THE INDUCEMENT DEFENSE FAILS AS A MATTER OF LAW BECAUSE THE REMEDY – RESCISSION – IS UNWORKABLE.

Under New York law, "[t]he traditional remedies for fraud in the inducement of a contract are an action seeking affirmation of the contract and damages or rescission." Chase Manhattan Bank, N. A. v. Finger Lakes Motors, Inc., 102 Misc. 2d 48, 51, 423 N.Y.S.2d 128, 129 (Sup. Ct. 1979) (internal citations omitted).  "Rescission unwinds the rescinded transaction, with each side returning whatever it received from the other to restore the status quo ante."  Kahraman v. Countrywide Home Loans, Inc., 886 F. Supp.

2d 114, 122 (E.D.N.Y. 2012) (quotation omitted).  "[R]escission may be obtained only when it is reasonably feasible to return the parties to their pre-contract status quo."  In re Ivan F. Boesky Sec. Litig., 825 F. Supp. 623, 637 (S.D.N.Y. 1993) (concluding that rescission was not available because "plaintiff has realized and paid for the full benefit of the contract" and "[t]here are no obvious means to undo the entire...transaction") aff'd, 36 F.3d 255 (2d Cir. 1994).  A "contract may not be affirmed in part and rescinded in part.  Friedman v. Richman, 213 A.D. 467, 469 (N.Y. App. Div. 1925) aff'd, 241 N.Y. 576 (N.Y. 1925).  If it cannot be rescinded in its entirety, it cannot be rescinded at all."  Id.; see also S. Shore Skate Club, Inc. v. Fatscher, 17 A.D.2d 840, 841 (N.Y. App. Div. 1962) (same).

Here, LNV argues that the Participation Agreement should be rescinded.  But rescinded as to whom?  LNV and OSM are assignees of their interests and have never paid any consideration to the other.  LNV purchased the Participation directly from the FDIC-R, not Marshall or OSM.  LNV is certainly not claiming any fraud on the part of the FDIC-R.  Similarly, Columbian and Marshall and Marshall's servicing affiliate, BankFirst, are all failed banks.  For a time, the FDIC acted as receiver for each of these failed banks.  LNV certainly is not claiming that the FDIC-R should also be made a party to this case due to its role in the transaction.  Moreover, Columbian's "purchase" of the Participation carried with it the obligation to fund certain Loan proceeds to Lake Austin.  Columbian did in fact fund approximately $3 million of the $6 million committed.  (Affidavit of Brian Dougherty, filed January 16, 2014, Ex. 4) [Dkt. #63].  Yet LNV purchased its Participation interest from the FDIC-R at a fraction of its face value.

(Compare Dkt. #91, Ex. 9 at Attachment "B" with Hartman Aff. Ex. B.)  By asking for rescission, is LNV seeking to have Columbian's $3 million "returned" to LNV?  Such a remedy would result in a windfall to LNV – all at the expense of a third party (OSM) who had nothing to do with the alleged fraud.

At this point, there is simply no way to equitably unwind the tangle of transactions that have grown around the Participation Agreement.

## V.    LNV'S FRAUD IN THE INDUCEMENT DEFENSE FAILS AS A MATTER OF LAW BECAUSE MARSHALL RETAINED SOLE LIABILITY RELATED TO THE MAKING OF, OR SALE OF INTERESTS IN, THE LAKE AUSTIN LOAN.

"The law in Minnesota holds that the assignment of a contract does not impose upon the assignee the duties or liabilities imposed by the contract on the assignor in the absence of the assignee's specific assumption of such liabilities."  Carstedt v. Grindeland, 406 N.W.2d 39, 42 (Minn. Ct. App. 1987) (internal citation omitted); RPC Props., Inc. v. STAT Dental, No. A12-0716, 2012 WL 5990298, at *3 (Minn. Ct. App. Dec. 3, 2012) (same).[2]

OSM purchased its lead "Lender" interest in the Lake Austin Loan from Marshall subject to an express set of limitations on liabilities being transferred with the Loan. Specifically, Marshall (not OSM) remained liable for obligations, claims, and other liabilities arising from (among other things) the "making of" the Loan, as well as the "sale of any interest" in the Loan.  (Moore Aff. Ex. 1 §§ 2, 3.)  By seeking rescission of the Lake Austin Participation Agreement for fraud in the inducement, LNV seeks to

---

[2] The assignment from Marshall to OSM is governed by Minnesota law.  (Moore Aff. Ex. 1 § 9.)

impose on OSM liability for claims for which Marshall agreed to remain liable.  Such a

reservation of liability is not only enforceable, but is the default rule in Minnesota.

Carstedt, 406 N.W.2d at 42.

## VI.    OSM AND ITS PREDECESSORS OWED NO FIDUCIARY DUTIES TO LNV.

LNV cites to cases for the purported proposition that lead banks owe fiduciary

duties to participants.  [Dkt. #96 pp. 28-29.]  LNV first cites the trial court decision in

Banque Arabe, while failing to disclose that the decision was expressly contradicted by

the Second Circuit on appeal.  [Id.]  The Second Circuit stated, in no uncertain terms:

> In the case of arm's length negotiations or transactions between
> sophisticated financial institutions, no extra-contractual duty of disclosure
> exists.  This same principle applies to loan participation agreements, in
> which there is deemed to be no fiduciary relationship unless expressly and
> unequivocally created by contract.

Banque Arabe, 57 F.3d at158 (internal citations omitted) (emphasis added).  Of course,

LNV cites to no part of the Participation Agreement creating a fiduciary relationship.

Nor could it.  The Participation Agreement expressly states that it does not create a

partnership, joint venture, or other "special relationship" of any kind.  [Dkt. #91, Ex. 8,

§§ 2.2k, 3.2b.]  As in Banque Arabe, this Court should enforce the contract.

In the other case relied upon by LNV, Sterling Nat. Bank v. Israel Disc. Bank of

N.Y., the bank's fiduciary duty arose directly from the contract:

> As to defendants' remaining counterclaims, the motion court properly
> determined that triable questions of fact exist as to whether Sterling's
> actions, in the exercise of its business discretion, violated its fiduciary
> obligation to defendants to act in good faith pursuant to sections 4.1 and 4.4
> of the participation agreements.

305 A.D.2d 184, 186 (N.Y. App. Div. 2003). By its terms, the Participation Agreement

expressly did not create a fiduciary or other "special" relationship. Accordingly, Sterling

is not helpful to LNV.

## VII.    OSM IS AN INNOCENT THIRD-PARTY AND CAN ENFORCE THE PARTICIPATION AGREEMENT.

LNV argues that Lake Austin illegally funded its equity stake in the Lake Austin

Project, and therefore OSM should not be allowed to enforce the Participation

Agreement. [Dkt. #96 p. 34.] Contracts that are not illegal on their face, and that do not

directly contemplate illegal acts, are enforced regardless of whether they are somehow

connected to illegal acts. In re Kalisch, 413 B.R. 115, 134 (Bankr. S.D.N.Y. 2008), aff'd,

No. 09 CIV. 1636, 2009 WL 2900247 (S.D.N.Y. Sept. 9, 2009) (enforcing security

interest even though money was used to acquire illegal diamonds where the "contract

itself was not immoral or illegal, as it did not violate the law by its terms" and "were not

directly contemplated by or necessary to the performance of the loan agreement"). The

Second Circuit has also stated, "Where an innocent third party, such as a holder in due

course, is suing upon an illegal contract, the policy argument [against enforcement of the

contract] is inapplicable because the plaintiff has done no wrong for which it should be

penalized." Bankers Trust Co. v. Litton Sys., Inc., 599 F.2d 488, 492-93 (2d Cir. 1979)

(distinguishing Sirkin v. Fourteenth St. Store, 124 A.D. 384, 394 (N.Y. App. Div. 1908)).

Thus, "insofar as it is enforcing the rights of an innocent party, the court does

not...participate in a wrong when it enforces an illegal contract." Id. at 493.

It cannot be disputed that the Participation Agreement did not on its face violate

the law, and that no unlawful acts were contemplated by, or necessary to the performance

of, the Agreement.  Nor can it be disputed that OSM is innocent of any alleged wrongdoing committed by Lake Austin and/or Marshall – OSM acquired its interest long after the alleged fraud occurred.  Therefore, the Participation Agreement should be enforced as written.

## VIII.  LNV HAS ADMITTED THAT THE CONTRACT IS VALID AND ENFORCEABLE.

Admissions in pleadings are binding unless withdrawn or amended.  Missouri Hous. Dev. Comm'n v. Brice, 919 F.2d 1306, 1314 (8th Cir. 1990) (admissions binding even where the admitting party later produced evidence contradicting the admissions); Nat'l Sur. Corp. v. Ranger Ins. Co., 260 F.3d 881, 886 (8th Cir. 2001) (affirming the district court's denial of motion to modify judgment because the arguments were inconsistent with party's pleadings).  "[J]udicial efficiency demands that a party not be allowed to controvert what it has already unequivocally told a court by the most formal and considered means possible."  Nat'l Sur. Corp., 260 F.3d at 886 (quoting Soo Line R.R. v. St. Louis S.W. Ry., 125 F.3d 481, 483 (7th Cir. 1997)).

LNV's Complaint is premised largely on OSM's alleged breach of the Participation Agreement.  [Dkt. #1 ¶¶ 1, 12, 43-44, 92, 97, 98, 130.]  LNV also explicitly pleaded that the "Grande Palisades Loan Participation Agreement is a valid, enforceable contract between OSM and LNV."  [Id. ¶ 128.]  OSM admitted the same.  [Dkt. #6 ¶ 129.]  Having admitted the contract is valid and enforceable in the most formal way possible, and having persuaded OSM to admit the allegation, LNV has pleaded its extra-contractual theories out of court.

## IX.   LNV CANNOT MAINTAIN INCONSISTENT CLAIMS JUST BECAUSE IT MIGHT LOSE ON ITS CONTRACT CLAIM.

LNV asserts that it may plead in the alternative because its contract claims may fail.  [Dkt. #96 p. 38.]  "A contract claim forecloses a claim for unjust enrichment, not only if the plaintiff is successful on the contract claim but also if the plaintiff was unsuccessful, so long as a contract was formed and it governs the matter in dispute." Superior Lake St. Props., LLC v. Wayzata Bay Ctr., LLC, No. A07-1582, 2008 WL 3897571, at *3 (Minn. Ct. App. Aug. 26, 2008).  The law is the same in New York. See PNCEF, LLC v. OZ Gen. Contracting Co., Inc., No. CV 11-724 SJF ARL, 2012 WL 4344538, at *9 (E.D.N.Y. Aug. 2, 2012) report and recommendation adopted sub nom. OZ Gen. Contracting Co., Inc. v. Timesavers, Inc., No. 11-CV-724, 2012 WL 4344500 (E.D.N.Y. Sept. 21, 2012) (dismissing unjust enrichment claim even though related contract claim was time-barred).  Therefore, the fact that LNV may lose on its contract claims does not justify delaying dismissal of its non-contract claims.

## X.   OSM SHOULD BE GRANTED A PROTECTIVE ORDER WHILE ITS MOTION FOR PARTIAL SUMMARY JUDGMENT IS PENDING.

There will be no need for the expansive discovery that LNV seeks if OSM's motion for partial summary judgment is granted.  Therefore, pursuant to Fed. R. Civ. P. 26(c), this Court should enter a protective order providing that OSM need not respond to LNV's most recent discovery requests until it rules on OSM's motion.

Federal Rule of Civil Procedure 26 provides that, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that…the burden or expense of the proposed discovery

outweighs its likely benefit, considering the needs of the case…the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).

LNV admits that the purpose of its discovery is to support its allegations of fraudulent inducement.  [Dkt #96 pp. 22-24.]  In particular, LNV contends that the depositions of Cecelia Borenko, Stephen Mann, Stephen McKenzie, Stephanie Lunde, Eric Johnson, Paul Eckhol, Mark Kruger, and Chris J. Urban "will assist LNV in further developing the factual bases for its fraudulent inducement and fraudulent concealment affirmative defenses."  [Dkt. #98 ¶¶ 13-16.]  In addition, LNV has also recently served a second set of written discovery on OSM, including requests for production of documents, interrogatories, and requests for admission.  LNV asserts that its second set of document requests is likewise "necessary in order to further develop LNV's defenses, including its fraud-based defenses…"  [Id. ¶ 17, Ex. 11 at Requests No. 1-25, 31 and 42.]  LNV's Interrogatories also "focus[] on issues surrounding OSM's and Marshal Financial Group, LLC's fraud…"  [Id. ¶ 18, citing Ex. 12 at Interrogatories No. 11, 12, 13 and 14.]  LNV's Requests for Admissions are also "probing for admissions that go to the heart of LNV's fraudulent inducement and fraudulent concealment affirmative defenses…"  [Id. citing Ex. 13 at Request Nos. 3, 4, 5, 6, 7 and 8.]

Thus, if OSM succeeds on its motion by showing that LNV cannot claim fraudulent inducement, the burden and expense of responding to the above-described discovery will completely outweigh its benefit, because discovery related to alleged fraudulent inducement will not resolve any issues.  See Fed. R. Civ. P. 26(b)(2)(C);

see also Miller v. Benson, 51 F.3d 166, 167 (8th Cir. 1995) ("The magistrate judge granted defendants' motion for a protective order and stayed plaintiff's discovery requests pending disposition of the motion for summary judgment"); Noll v. Petrovsky, 828 F.2d 461, 462 (8th Cir. 1987) (noting that the "district court granted appellees a partial protective order from discovery pending disposition of appellees' motion for summary judgment").

If, on the other hand, OSM is unsuccessful, it will thereafter timely respond to LNV's most recent discovery (hereby reserving, of course, any objections it may have).

## CONCLUSION

LNV's latest effort to hinder this Court from resolving the issues at the heart of this lawsuit should not be rewarded. LNV's fraudulent inducement defense fails as a matter of law. Therefore, OSM respectfully requests that this Court grant its motion for partial summary judgment, dismiss LNV's non-contract claims, and order that neither OSM nor any third party shall be required to respond to LNV's "probing" for discovery related to its fraudulent inducement defense.

ANTHONY OSTLUND BAER
& LOUWAGIE P.A.

Dated:  August 12, 2014            By:    s/ Aaron R. Hartman
                                        Aaron R. Hartman (#0320195)
                                        Philip J. Kaplan (#0389351)
                                        Jacob T. Schutz (#0395648)
                                    90 South Seventh Street, Suite 3600
                                    Minneapolis, MN  55402
                                    Telephone:  (612) 349-6969
                                    Facsimile:   (612) 349-6996

                                    ATTORNEYS FOR DEFENDANTS

23